UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------x
:
REAGAN, MICHAEL                  :    CIVIL ACTION:
    Plaintiff                    :    3:02 CV 627 (CFD)
                                 :
                                 :
V.                               :
                                 :
                                 :
FOX NAVIGATION, LLC              :
    Defendant                    :    MARCH 4, 2005
------------------------------------------------x

## MOTION TO ENFORCE SETTLEMENT

The Intervening Plaintiff, Fox Navigation, LLC, respectfully moves that the court enforce the settlement reached in this case, whereby the plaintiff was to satisfy a worker's compensation lien of Fox Navigation's insurance carrier Liberty Mutual Insurance. The intervening plaintiff submits the following facts and law in support hereof.:

## FACTS

1.      This action was initiated April 9, 2002 upon Notice of Removal by defendant Fox Navigation, LLC ("Fox"), from Connecticut Superior Court, Judicial District of New London.

2.      Plaintiff, Michael Regan, filed suit against Fox his employer, alleging personal injuries sustained during the course of his employment and claiming damages under the Jones Act.

3.      Plaintiff's complaint alleged that on August 3, 2000, while working on a barge in New London he sustained injuries during a water line transfer.

4.      Prior to filing this Jones Action lawsuit, plaintiff, in March 2001, had filed for state workers compensation benefits at the Worker's Compensation Commission in Norwich, Connecticut.

THE LAW OFFICES OF NANCY S. ROSENBAUM
655 WINDING BROOK DRIVE, GLASTONBURY, CT 06033 • (860) 633-9471 • JURIS NO. 016566

5.  In May of 2001, Liberty Mutual, as compensation carrier for Fox, began paying medical and indemnity benefits to Plaintiff Michael Reagan pursuant to state worker's compensation statutes. Liberty has paid to date benefits totaling $50,442.53 in Medicals and $55,651.97 in indemnity.

6.  During the Federal Jones Act litigation, plaintiff, through his attorney, was put on notice that Liberty Mutual was asserting, pursuant to §31-293 of the Connecticut General Statues, lien rights on any judgment or settlement in the Federal Jones Act litigation.

7.  Plaintiff's counsel represented to Liberty that he would advise Liberty of any settlement discussions and or negotiations. Plaintiff's counsel requested from Liberty and was provided with periodic updated statements of the lien amounts.

8.  In December 2004, Liberty was advised by Plaintiff's counsel's office that a scheduled settlement conference had been cancelled and was to be rescheduled. Liberty was not further advised of any settlement discussions or negotiations.

9.  During the month of January 2005, settlement negotiations occurred between counsel for plaintiff's and defendant and this case settled in February 2005. Liberty was not included in those negotiations.

10. The release signed by the plaintiff in this case (attached as exhibit A), states, in part,

> I…acknowledge that it is my sole obligation to resolve any and all claims liens or demands that have been, or may be, asserted by any third party(ies) against any and all sums that I have received from releasee. I further acknowledge that it is my sole obligation to resolve the claim of Liberty Mutual Insurance Co. for any and all worker's compensation benefits that I have received as part of a claim for said benefits arising from the incident alleged in my Complaint and/or Amended Complaint.

11. Plaintiff through counsel has refused to honor the claim of Liberty Mutual for reimbursement of workers compensation benefits paid on behalf of Fox Navigation, LLC.

LAW

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." Audubon Parking Assocs. L.P.

Page 7

THE LAW OFFICES OF NANCY S. ROSENBAUM
655 WINDING BROOK DRIVE, GLASTONBURY, CT 06033 • (860) 633-9471 • JURIS NO. 016566

v. Barclay & Stubbs, Inc., 225 Conn. 804, 811, 626 A.2d 729 (1993); see also Meetings & Expositions, Inc. v. Tandy Corp., 490 F.2d 714, 717 (2d Cir.1974) ("A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it.") Pultney Arms LLC v. Shaw Industries, Inc WL 31094971 D.Conn., 2002. Sep 06, 2002

      Wherefore the intervening plaintiff, FOX NAVIGATION and LIBERTY MUTUAL, respectfully request that the Court grant this motion and order plaintiff to resolve the worker's compensation lien.

                              INTERVENING PLAINTIFF -
                              Fox Navigation, LLC
                              LIBERTY MUTUAL

                              By_____
                                William J. Shea
                              Its Attorney
                            Law Offices of Nancy S. Rosenbaum
                            655 Winding Brook Drive
                            Glastonbury, CT 06033
                            Tel. # 633-9471
                            US District Bar #07162

## CERTIFICATION

This is to certify that a copy of the foregoing has been mailed postage prepaid to the following parties of record on this ____ day of March, 2005.

Attorney Matthew Shafner
O'Brien, Shafner, Stuart, Kelly & Morris
P. O. Drawer 929
Groton, CT 06340

Attorney Kevin Lennon
Tisdale & Lennon, LLC
10 Spruce Street
Southport, CT 06890

By_____
William J. Shea
Their Attorney
Law Offices of Nancy S. Rosenbaum
655 Winding Brook Drive
Glastonbury, CT 06033
Tel. #860 633-9471
US District Bar # 07162

Page 3

**THE LAW OFFICES OF NANCY S. ROSENBAUM**
655 WINDING BROOK DRIVE, GLASTONBURY, CT 06033  •  (860) 633-9471  •  JURIS NO. 016566

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

---------------------------------------X
MICHAEL G. REAGAN,                     :
                                       :
         Plaintiff,                    :
                                       :    C.A. NO. 3:02 CV 627 (CFD)
    -against-                          :
                                       :    **RELEASE**
FOX NAVIGATION, LLC,                   :
                                       :
         Defendant.                    :
---------------------------------------X

**MICHAEL G. REAGAN**, Plaintiff and Releasor, in consideration of the sum of ONE HUNDRED TWENTY-TWO THOUSAND FIVE HUNDRED AND NO/100 DOLLARS ($122,500.00) received from **FOX NAVIGATION, LLC**, Defendant and Releasee, the receipt and sufficiency of which is hereby acknowledged, does hereby release and forever discharge **FOX NAVIGATION, LLC**, Defendant and Releasee, and its parents, subsidiaries, affiliates, heirs, executors, administrators, successors, assigns and insurers, including, but not limited to, the Mashantucket Pequot Tribal Nation and the CNA Financial Corp., from any and all rights or causes of action, suits, liens, debts, dues, sums of money, damages, accounts, reckonings, bonds, bills, specialties, covenants, controversies, agreements, promises, variances, trespasses, damages, judgments, extents, executions, demands and claims whatsoever, including, but not limited to, all rights or causes of action in law, admiralty or equity, which against the Defendant and Releasee, the Releasor, his heirs, executors, administrators, successors and assigns ever had, now had or may hereafter can, shall or may have for, upon, or by reason of any matter, cause or thing from the beginning of the world to the date of this Release with regard to any injury or damage allegedly sustained by the Releasor as the result of an incident which allegedly occurred

alongside the M/V SASSACUS on or about August 3, 2000 which caused injuries consisting in part, but not limited to, my neck, back, shoulders, arms and hands. I am releasing the above mentioned parties for all of these injuries and disabilities, including the aggravation of any condition resulting from these injuries, and/or any other ailment, disease, injury or illness, including any emotional and/or mental disorders, cognitive difficulties, depressive reactions, anxiety, and any accompanying pain and suffering which I have suffered or may hereafter suffer as a result of these injuries, and any other illness, incapacity or disability of any other portion or portions of my body and/or mind resulting from this accident.

I acknowledge that my acceptance of $120,000 from the Releasee is in full and final satisfaction of any and all of my claims, as described in this RELEASE, against the Releasee. I further acknowledge that it is my sole obligation to resolve any and all claims, liens or demands that have been, or may be, asserted by any third-party(ies) against any and all sums that I have received from the Releasee. I further acknowledge that it is my sole obligation to resolve the claim of Liberty Mutual Insurance Co. for any and all workers' compensation benefits that I have received as part of a claim for said benefits arising from the incident alleged in my Complaint and/or Amended Complaint.

I hereby agree to hold harmless and indemnify the Releasee from any claim, suit, action, demand, arbitration, or litigation initiated by any third-party(ies) for recovery of sums claimed to have been paid to me, sums for services rendered to me, or sums for benefits otherwise conferred upon me, including, but not limited to, Liberty Mutual Insurance Co. for workers' compensation benefits, and/or any physician(s), hospital(s) or other health care provider(s), who have treated me for conditions alleged to have been sustained, exacerbated or otherwise caused by the incident alleged in my Complaint and/or Amended Complaint.

Page 2 of 4
Releasor's Initials: ____

The release hereby granted includes without limitation, all claims and demands set forth, included in, or which could have been asserted in the matter in litigation entitled "Michael G. Reagan v. Fox Navigation, LLC" bearing Civil Action No. 3:02 CV 627 (CFD), pending on the docket of the U.S. District Court for the District of Connecticut, and I hereby covenant and agree to dismiss, with prejudice, my claims in the aforementioned action and suit, each party to bear its own costs.

The payment of the aforesaid sum by Releasee is made as part of a compromise settlement and is made without admission of any liability or negligence by the Releasee and with the acknowledgment that Releasee denies all of the material allegations made by the Releasor which forms the basis of the Releasor's claims as set forth in the Releasor's Complaint and/or Amended Complaint filed in the United States District Court for the District of Connecticut, pending under docket number C.A. NO. 3:02 CV 627 (CFD).

The words "Releasor" and "Releasee" include all releasors and releasees under this RELEASE.

Releasor and Releasee agree to bear their respective costs and attorney's fees incurred in this action with the execution of this Release.

This Release may not be changed or modified orally but may only be changed in a writing signed by both Releasor and Releasee.

The laws of the State of Connecticut govern this Release.

Releasor acknowledges by signing this Release, and initialing each of the four (4) pages of this Release, that he was fully reviewed and agrees to the terms of this Release, and that he has satisfactorily conferred with his counsel concerning any issues or concerns he has regarding signing this Release.

In Witness Whereof, the Releasor hereunto set his hand and seal on this the 1 day of ~~February~~ March 2005.

_____
MICHEAL G. REAGAN

STATE OF CONNECTICUT    )
                        )  ss.: GROTON
COUNTY OF NEW LONDON    )

On the 1st day of ~~February~~ March 2005, before me personally came and appeared MICHAEL G. REAGAN, to me known and known to me to be the individual described in, and who executed the foregoing RELEASE, and who duly acknowledge to me that he executed the same.

_____
~~NOTARY PUBLIC~~
Commissioner of Superior Court

Page 4 of 4
Releasor's Initials: _____



Not Reported in F.Supp.2d
2002 WL 31094971 (D.Conn.)
(Cite as: 2002 WL 31094971 (D.Conn.))

Page 1

C

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

United States District Court, D. Connecticut.
PULTNEY ARMS LLC
v.
SHAW INDUSTRIES, INC.
No. 3:00CV2052 (JBA).

Sept. 6, 2002.

Ruling on Cross-Motions to **Enforce Settlement**
[Docs. 33 & 37]

ARTERTON, J.

*1 After a **settlement** agreement was reached between the parties in this diversity breach of contract action, a dispute arose concerning terms of the agreement. The parties have filed cross-motions for **enforcement** of the **settlement**, each requesting that the Court summarily **enforce** different terms. For the reasons set out below, Plaintiff's motion is granted and Defendant's motion is denied.

I. Background

Pultney Arms / Trimar Equities ("Pultney") [FN1] leased 2115 Dixwell Avenue ("the property") to New York Carpet World of New England ("New England"), with the lease guaranteed by New England's parent company, New York Carpet World, Inc. ("Inc."). Shaw Industries ("Shaw") subsequently purchased both New England and Inc., and as part of that purchase, Shaw guaranteed Pultney full payment of rent and the performance of all terms and conditions of the lease. In 2000, Inc.'s successor company, Maxim, filed for Chapter 11 protection in Georgia and rejected the lease, thereafter abandoning the property and failing to pay any rent. Pultney commenced this action against Shaw, claiming that under Shaw's guarantee of the lease, Shaw is liable to Pultney for unpaid rent and associated collection costs.

> FN1. Although suit was commenced in 2000 with "Pultney Arms LLC" as plaintiff, a subsequent filing [Doc. # 12] by plaintiff disclosed that the real party in interest has, since 1997, been Trimar Equities LLC. For clarity, the Court refers to Pultney / Trimar as "Pultney."

The parties were referred to Magistrate Judge Joan Glazer Margolis for a settlement conference, and after three meetings, a settlement was put on the record. The transcript of the proceeding reflects the following terms: (1) Shaw was to pay Pultney $560,000 in thirty days; (2) Pultney would file a dismissal of this lawsuit with prejudice; (3) the parties would exchange mutual releases, with plaintiff providing releases from both Pultney Arms LLC and Trimar Equities LLC; and (4) Pultney would file a withdrawal of the claim it had filed in the bankruptcy action pending in Georgia.

Pultney transmitted to Shaw's counsel a draft notice of dismissal with prejudice, a draft withdrawal of proof of claim, and draft mutual releases, and in response, Shaw sent a proposed multi-page **settlement** agreement. Pultney refused to sign this **settlement** agreement, arguing that the agreement set out on the record is the entirety of the agreement between the parties, and that "the proposed **Settlement** Agreement contained other terms and conditions not discussed and such an agreement in lieu of the agreement put on the record on November 16, 2001 was unacceptable." [Doc. # 34] at 3-4. Pultney thereafter moved [Doc. # 33] to **enforce** the agreement with only those terms put on the record before the Magistrate Judge; that is, with only dismissal of this action with prejudice, withdrawal of the bankruptcy claim, and mutual releases.

Shaw opposes Pultney's motion and filed its own motion [Doc. # 37] to summarily [FN2] **enforce** the **settlement** agreement, albeit with an additional

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d  
2002 WL 31094971 (D.Conn.)  
(Cite as: 2002 WL 31094971 (D.Conn.))

Page 2

proviso. Shaw claims that "on several occasions, counsel for plaintiff ... represented to both the Court and Shaw's attorneys that Plaintiff needed approval from its lender, G.E. Capital, to settle the above-captioned case" and that on the date the settlement mediated by the Magistrate Judge was concluded, "Plaintiff's attorneys represented to both the Court and Shaw's attorneys that Plaintiff had obtained lender approval" to settle for $560,000. [Doc. # 37] at 1. Shaw contends that it relied on these representations, "thereby making Plaintiff's representations regarding lender approval a material term in the settlement agreement," id. at 2, and that Pultney has refused to confirm these representations in writing. Further, Shaw alleges that in a subsequent telephone conference with the Magistrate Judge, "Plaintiff's attorneys stated to both the Court and Shaw's attorneys that, contrary to previous representations[ ], Plaintiff did not have lender approval and that it would not obtain lender approval." Id. Shaw asks the Court to enter a settlement judgment "requiring Plaintiff to obtain either: (1) written authority from its lender, G.E. Capital, that Plaintiff may settle the case for $560,000; or (2) written acknowledgment from G.E. Capital that its approval was not (and is not) a condition precedent to Plaintiff's settlement of the case...." [Doc. # 37] at 3.

> FN2. Shaw's motion requests entry of settlement judgment, and is marked only "Oral Argument Requested"; no request is made for an evidentiary hearing and no indication is present that Shaw believes testimony is required.

*2 In opposition to Shaw's motion, Pultney represents that any comments regarding lender approval "revolved around Plaintiff's need to consult with its lender because of the problems Defendant's breach of the guarantee was causing between Plaintiff and its lender." [Doc. # 39] at 3 (emphasis omitted). In an attached affidavit, Pultney's attorney avers that any discussions between G.E. Capital and Pultney "were Plaintiff's concern and for Plaintiff's benefit," Gaynor Aff. ¶ 4 [Doc. # 39 Ex. A], and that neither Pultney nor its attorney represented that any such written consent was necessary, id. ¶ 6. Pultney then identifies several areas of the written settlement agreement that it found problematic, including an indemnification provision that includes the payment of attorney's fees, a representation that neither party dealt with a broker, and a requirement that if any litigation arises from the settlement agreement, the losing party will pay the attorney's fees of the prevailing party.

II. Analysis

"A settlement is a contract, and once entered into is binding and conclusive." *Janneh v. GAF Corp.*, 887 F.2d 432, 436 (2d Cir.1989), overruled on other grounds by *Digital Equipment Corp. v. Desktop Direct, Inc.*, 511 U.S. 863, 114 S.Ct. 1992, 128 L.Ed.2d 842 (1994); accord *Janus Films, Inc. v. Miller*, 801 F.2d 578, 583 (2d Cir.1986) ("Agreements that end lawsuits are contracts, sometimes enforceable in a subsequent suit, but in many situations enforceable by entry of a judgment in the original suit."). The interpretation and enforcement of contractual obligations between private parties is controlled by principles of state law. See *Concerned Tenants Ass'n of Father Panik Village v. Pierce*, 685 F.Supp. 316, 323 (D.Conn.1988); see also *Ciaramella v. Readers Digest Association, Inc.*, 131 F.3d 320, 322 (2d Cir.1997) (concluding that general principles of contract interpretation regarding parties' intent applied to determination of whether parties reached settlement of claims).

"A trial court has the inherent power to enforce summarily a settlement agreement as a matter of law when the terms of the agreement are clear and unambiguous." *Audubon Parking Assocs. L.P. v. Barclay & Stubbs, Inc.*, 225 Conn. 804, 811, 626 A.2d 729 (1993); see also *Meetings & Expositions, Inc. v. Tandy Corp.*, 490 F.2d 714, 717 (2d Cir.1974) ("A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it.") (citations omitted).

> Summary enforcement is not only essential to the efficient use of judicial resources, but also preserves the integrity of settlement as a meaningful way to resolve legal disputes. When parties agree to settle a case, they are effectively contracting for the right to avoid a trial. The asserted right not to go to trial can appropriately be based on a contract between the parties. We hold that a trial court may summarily enforce a

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

h   e   c   e   e   h   e   f

Not Reported in F.Supp.2d
2002 WL 31094971 (D.Conn.)
**(Cite as: 2002 WL 31094971 (D.Conn.))**

Page 3

settlement agreement within the framework of the original lawsuit as a matter of law when the parties do not dispute the terms of the agreement.
*3 *Audubon,* 225 Conn. at 812, 626 A.2d 729 (internal quotations and citations omitted).

The record reflects and the parties agree (as evidenced by their cross-motions for summary enforcement) that a binding settlement has been reached, and that the Court has authority to enter judgment pursuant to that settlement. The only question presented by these motions is whether judgment should be entered strictly in accordance with the agreement set out on the record before the Magistrate Judge, as Pultney requests, or whether judgment should be entered with a proviso regarding lender approval, as Shaw requests.

G.E. Capital is not a party to this lawsuit; the only parties of record are Pultney and Shaw. With certain exceptions not applicable in this straightforward contract suit based on state law, the Federal Rules of Civil Procedure give the parties to a lawsuit the authority to settle the action and stipulate to the dismissal of the suit with prejudice. Fed.R.Civ.P. 41(a)(1); Wright & Miller, Federal Practice & Procedure: Civil 2d § 2362 at 249-250 ("Of course, a case, with very few exceptions, may be dismissed at any time by stipulation of all the parties."). A dismissal with prejudice, such as that provided for in the terms of the settlement stated on the record before the Magistrate Judge, "is subject to the usual rules of res judicata and is effective not only on the immediate parties but also on their privies." *Id.* § 2367 at 319-320 (*citing, inter alia, Astron Indus. Associates, Inc. v. Chrysler Motors Corp.,* 405 F.2d 958, 960-961 (5th Cir.1968) (stipulation of dismissal with prejudice constitutes a final judgment on the merits which bars a later suit on the same cause of action by anyone in privity with the parties to the original suit)); *accord Horton v. Trans World Airlines Corp.,* 169 F.R.D. 11, 16 (E.D.N.Y.1996.).

In the settlement reached on the record before the Magistrate Judge, the parties agreed to dismiss this suit with prejudice, and Pultney has provided a stipulation to that effect which Shaw agrees is acceptable in form. *See* Letter from Thomas Finn (attorney for Shaw) to Eric Gaynor (attorney for Pultney) of December 13, 2001 ("The Notice of Dismissal that you forwarded to me is fine as is and if you would like me to execute the faxed copy, I will do so and overnight it to you for filing with the court.") (attached as an exhibit to [Doc. # 34] ). Additionally, the settlement on the record provides for mutual releases, and the releases proposed by Pultney are sufficiently broad to preclude any subsequent lawsuit regarding unpaid rents from Shaw:

> [Releasor] does remise and forever discharge the said Releasee of and from all debts, obligations, reckonings, promises, covenants, agreements, contracts, endorsements, bonds, specialties, controversies, suits, actions, causes of actions, trespasses, variances, judgments, extents, executions, damages, claims or demands, in law or in equity, which against the said Releasee, the Releasor ever had, now has or hereafter can, shall, or may have, for, upon, or by reason of any matter, cause or thing whatsoever, from the beginning of the world until the date of theses [sic] presents.

*4 Draft Release provided by Pultney (attached as an exhibit to [Doc. # 33] ). Finally, Pultney has tendered a withdrawal of the proof of claim in the Georgia bankruptcy action, and Shaw has not objected to the form of the withdrawal.

Given the stipulation of dismissal with prejudice, the broad mutual releases and the withdrawal of the bankruptcy claim, the Court discerns no consequence of any purported lack of approval of non-party G.E. Capital. On this record, with G.E. Capital not a party to this action and not having been shown to have any separate, legally actionable interest in the outcome of the parties' dispute, lender approval or the lack thereof is an internal dispute of concern only as between Pultney and G.E. Capital. Pultney's representations in its motion confirm this, *see* Gaynor Aff. ¶¶ 4 & 6 [Doc. # 39 Ex. A], and based on these representations, judgment will be rendered in accordance with the terms set out on the record before the Magistrate Judge. If, despite the dismissal with prejudice (which, as noted above, binds those in privity with Pultney) and the broad mutual releases, either Pultney or G.E. Capital attempts to use a lack of lender approval to frustrate the clear terms of the settlement and deprive Shaw of the benefit of its bargain, relief is available under Fed.R.Civ.P. 60(b)(3), which provides for relief from judgment in cases of "fraud[,]

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

h    e    c    e e    h    e    f

Not Reported in F.Supp.2d
2002 WL 31094971 (D.Conn.)
**(Cite as: 2002 WL 31094971 (D.Conn.))**

Page 4

misrepresentation, or other misconduct of an adverse party."

III. Conclusion

For the reasons set out above, Plaintiff's Motion to **Enforce Settlement** Agreement and Enter **Settlement** Judgment [Doc. # 33] is GRANTED and Defendant's Cross-Motion to **Enforce Settlement** Agreement and for Entry of **Settlement** Judgment [Doc. # 37] is DENIED. Inasmuch as the terms of the **settlement** agreement provided that payment was to be made in thirty days, the judgment will include prejudgment interest at the federal post-judgment rate from January 18, 2002. [FN3] Judgment will enter accordingly.

> FN3. Although the agreement was placed on the record on November 16, 2001, plaintiff has requested prejudgment interest only from January 18, 2002. [Doc. # 39] at 10.
> Plaintiff's request for attorney's fees was raised for the first time in reply, and is thus not part of its motion. *See* D. Conn. L. Civ. R. 9(g) (reply briefs "must be strictly confined to a discussion of matters raised by the responsive brief"); *Knipe v. Skinner,* 999 F.2d 708, 711 (2d Cir.1993) ("Arguments may not be made for the first time in a reply brief.").

2002 WL 31094971 (D.Conn.)


**Motions, Pleadings and Filings (Back to top)**

. 3:00CV02052 (Docket)
(Oct. 25, 2000)

END OF DOCUMENT

© 2005 Thomson/West. No Claim to Orig. U.S. Govt. Works.

h        e        c        e    e    h    e        f